BLOXHAM v. WALLACE et al. (No. 2857.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 17, 1924.)

1. Trial ☞356(7)—Refusal to require answers to issues as to fraudulent purpose in transferring notes and transferee's notice thereof held reversible error.

In an action by a trustee in bankruptcy to cancel vendor's lien notes as assigned to defendant to hinder or defraud creditors, refusal to require the jury to answer special issues submitted to them as to whether the notes were transferred for such purpose and whether transferee had notice thereof *held* reversible error.

2. Trial ☞350(4)—Refusal of special issue as to bankrupt's indebtedness to transferee of vendor's lien notes held erroneous.

In an action by a trustee in bankruptcy to cancel vendor's lien notes as assigned to defendant to hinder, delay, and defraud creditors, where the court charged the jury, at defendant's request, that "valuable consideration," as used in the main charge submitting the issue whether defendant purchased the notes "in good faith" for a valuable consideration, meant either money or notes, it was error to refuse to submit plaintiff's special issue as to whether transferor was indebted to defendant in the amount of a note shown to have been executed by him to defendant, as the jury could reasonably conclude, under the definition given, that execution of a note would satisfy the law, though without consideration, and could have referred the term "good faith" to defendant's belief that transferor was the owner of the notes.

3. Bankruptcy ☞175—Conveyance by bankrupt for valuable consideration paid, to grantee without notice of intent to defraud creditors, not void as to grantee.

A conveyance of land by a bankrupt, for a valuable consideration actually paid, to a grantee without notice of grantor's intent to hinder, delay, or defraud creditors, would not be fraudulent or void as to grantee under Rev. St. arts. 3966, 3967.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by W. M. Bloxham, trustee in bankruptcy, against S. B. Wallace and another. Judgment for defendants, and plaintiff appeals. Affirmed in part, and reversed and remanded in part.

On April 19, 1921, E. D. Jones executed a deed to S. B. Wallace conveying him 90½ acres of land in consideration of $500 cash and seven vendor's lien notes for $500 each, bearing 8 per cent. interest, and payable to E. D. Jones or order, one, two, three, four, five, six, and seven years, respectively, after date. The deed was registered June 6, 1921. In May, 1921, E. D. Jones assigned and transferred the seven vendor's lien notes to W. M. Jones. Afterwards on April 11, 1922, E. D.

Jones filed a voluntary petition in bankruptcy, and thereupon W. M. Bloxham was duly appointed trustee. This action is by the trustee to set aside the conveyance to S. B. Wallace and to cancel the vendor's lien notes assigned to W. M. Jones, upon the ground that they were simulated transactions and done with intent to hinder, delay, and defraud creditors. The petition also asks, in the alternative, that in the event the deed to S. B. Wallace be held valid the title and possession of the vendor's lien notes be adjudged to be in the trustee and that the debt be made payable to him, in virtue of the bankruptcy proceedings. The defendant S. B. Wallace pleaded general denial and that he purchased the land for a valuable consideration, in good faith, and without knowledge or notice of any fraud or intended fraud, if any, in his grantor, E. D. Jones. The defendant W. M. Jones pleaded general denial and that he was a bona fide holder of the said notes, purchasing same in due course of trade before maturity, for a valuable consideration, and without any knowledge or notice whatever of any facts or circumstances of any fraud or intended fraud, if any, on the part of either the vendor or vendee in the deed.

The case was submitted to the jury on special issues, and they made the findings of fact:

(1) That the conveyance of the land by E. D. Jones to S. B. Wallace, of date April 19, 1921, was made with the intent on the part of E. D. Jones to defraud his creditors; but (2) that E. D. Jones at the date of the deed was then possessed of property, subject to execution, sufficient to pay his existing debts; and (3) that S. B. Wallace, the grantee, paid to E. D. Jones a valuable consideration for the tract of land, and without notice of the fraudulent intent of E. D. Jones at the time of the execution of the deed; (4) that W. M. Jones purchased the vendor's lien notes in good faith from E. D. Jones, and paid a valuable consideration therefor and without notice of the fraudulent intent of E. D. Jones in conveying the land to S. B. Wallace.

In keeping with the verdict of the jury, the court rendered judgment against the trustee, that he take nothing by his suit.

As to whether or not E. D. Jones conveyed the 90⅕ acres of land to S. B. Wallace with the intent to defraud existing creditors rests entirely in the inference that might be drawn from the testimony considered as a whole. At that time he was a cotton buyer and had suffered a considerable loss in the sudden decline of cotton. He owed at the time about $7,000 to the State Exchange Bank, and about $800 to other creditors, and, as he claimed, $2,500 to his brother, W. M. Jones. The evidence though, does not support the answer of the jury that at the time of the execution of the deed to S. B. Wallace the grantor, E. D. Jones, was possessed of property subject to execution sufficient to pay his existing debts. According to his own and the most favorable testimony, it appears that E. D. Jones possessed property, including homestead and exempt property, of the total valuation of $11,930. His exempt property has the valuation shown of $2,275, leaving a balance over exemptions of $9,655. But a part of the property, the Rowe place, valued at $3.000, had a lien against it of $2,500 and interest, and did not, it appears, on subsequent foreclosure sale, bring more than the indebtedness against it. So deducting the $3,000 valuation, or even the face of the indebtedness of $2,500, placed on the Rowe place from the above balance of $9,655, there is left a balance of slightly more than $7,000. This is the total amount that would be subject to his debts, of $7,000 owing to the bank, $2,500 claimed to be owing to W. M. Jones, and the other debts of $800 aggregating $10,300. Then for the purposes of this appeal the facts will be assumed to be that E. D. Jones was not possessed of property sufficient to pay all his existing debts at the time of the conveyance of the land to S. B. Wallace and the transfer of the vendor's lien notes to W. M. Jones, and that such deed was made to S. B. Wallace, as found by the jury, with intent on the part of E. D. Jones to defraud his creditors.

There is ample evidence to support the finding of the jury that S. B. Wallace was a purchaser of the land in suit in good faith, and paid a valuable consideration therefor without any notice of any fraudulent intent, if any, on the part of E. D. Jones in effecting a sale of the land. S. B. Wallace had recently married the daughter of E. D. Jones, and was a resident of Dallas, Tex. He testified:

"I never lived in New Boston, or Bowie county. I had visited Mr. Jones' home in New Boston before I married in March, 1920, and have visited there since I married, perhaps as much as six or eight times. I am a salesman for Edison phonographs, and am working on a salary and as well a commission. I bought a piece of property from him near New Boston. I was in Dallas at the time the deed was made and delivered to me by Mr. E. D. Jones. He brought it over there to me. He did that because I bought it from him. * * * I had been over to New Boston prior to the time I purchased the land. My wife and I were there on a visit. I had some money saved up, and I wanted to invest it. I proposed to Mr. Jones to buy the land and give him $4,000 for it if he would sell it to me for $500 down and in a way that I could make easy payments for it. I paid him $500 in money, and I executed the notes for the balance. I have since paid off one of the $500 notes when it was due, and I paid the interest in full on all the notes. I paid in all $780. I paid it May 1, 1922, to W. M. Jones. At the time I bought the land, I did not know anything about whether or not Mr. Jones had any cotton loss. He was buying and selling cotton. So far as I knew, Mr. Jones had never been sued by anybody, and I did not know that he was indebted, or greatly indebted. I had no

information or notice of his insolvency. I bought the place in good faith, and have been paying on it. I did not know anything about Mr. Jones' indebtedness to the State Exchange Bank. I have been paying the taxes on the property."

It was shown that the land was worth at the time $4,000. It was also shown that land value afterwards was lower than during that year.

W. M. Jones testified:

"I own a farm of 100 acres, with about 70 acres in cultivation. My family consists of myself, wife, and one daughter. My main crop is cotton. I had some money in 1919. I think I made 18 bales of cotton in 1919. I had one tenant on the farm. Cotton that year was worth about $200 a bale. I had been saving my money prior to that time. I had been saving a little money for several years. I loaned my brother E. D. Jones in the fall of 1919 $2,500. He wanted it for three or four months. I did not take a note for it at that time. When that time was up, he then gave me his note for the money due in March, 1921, with 10 per cent. interest. That was either March 8 or 10, 1920. He paid that note off in May, 1921, after he sold this land in April, 1921. He came to me and told me that he wanted to transfer to me these land notes for his note. I did not know of any trouble with the bank or any one else when I bought over the land notes. I did not know of him having any financial trouble until after the bankruptcy proceeding. I did not have any knowledge or notice that he owed anybody * * * when I loaned him the $2,500. I did not give a check. I had the money at home. I had $2,700 or $2,800. I have done business with a bank. I have borrowed some money. I borrow money nearly every year. I borrowed money in 1919. I owe money down there now. I have a little checking account there. I keep some money in the bank and some at home. I owe the bank about $400 now. I borrowed money in 1921 and paid it back in 1921. I did not pay my brother any difference in cash for the notes; he just gave me the land notes for what he owed me. He traded me those notes for his note."

The cashier of the State Exchange Bank testified:

"I know W. M. Jones. He lives on a farm five miles east of here. He lives on his farm— probably 100 acres. He did not have any surplus money in 1919 or 1920 to my knowledge, but I had no particular knowledge of his financial standing, just a general knowledge. He was what is termed a one-horse farmer. He was a borrower and not a lender of money. I never did hear anybody say he was in a financial stress. He never did borrow any money from me. He bought three shares of the capital stock of our bank, and paid spot cash for it. He did not give a check for it; he brought the money and gave it to me. He is a man that is conservative in his business, but he has to borrow money each year to finance his crop. He was borrowing money in 1919 and in 1920 when he bought the bank stock."

There is no claim made that W. M. Jones paid E. D. Jones money or any other thing for the land notes in suit. The only claim is that W. M. Jones gave and delivered to E. D. Jones, in exchange for the land notes, the $2,500 note executed by E. D. Jones to W. M. Jones.

Wheeler & Robison, of Texarkana, for appellant.

Johnson & Waters, of New Boston, for appellees.

LEVY, J. (after stating the facts as above). In view of the pleadings and the evidence, the controversies can be considered separately, and severable, respecting the sale of the land to appellee S. B. Wallace and the transfer of the land notes to appellee W. M. Jones.

[1] The errors assigned as specially pertaining to the land notes will be first considered. The court gave the following special issue:

"Do you believe from a preponderance of the evidence that at the time E. D. Jones transferred the land notes in suit to the defendant W. M. Jones, that E. D. Jones was insolvent, and that the purpose of such transfer was to hinder, delay, or defeat his creditors, and that W. M. Jones had notice of the insolvency of E. D. Jones and of the intention and purpose of E. D. Jones to hinder and delay or to defeat and defraud his creditors, and accepted the said notes?"

The jury, it appears, "when they returned into court answers to all of the special issues prepared by the court, and submitted to them, failed to answer the above and foregoing special issue submitted to them by the court." The bill of exception further shows that—

"The plaintiff in open court requested the court to require the jury to answer said special issue. The court failed and refused to grant the request of the plaintiff to require the jury to answer the said special issue, and over the objection of the plaintiff discharged the jury without requiring them to answer the said special issue."

The issue really submits three different questions to be answered. One of the questions was practically covered in other issues submitted. But the other two questions were not pertinently submitted in other special issues for finding by the jury, (1) of whether or not E. D. Jones transferred the notes for the purpose of hindering or defrauding his creditors, and (2) of whether or not W. M. Jones had notice of such purpose or intention on the part of E. D. Jones. The questions were made material in the case by the evidence offered. Having submitted the issue as done, the appellant was entitled to have the jury answer the same.

[2] The court submitted the following issue to the jury:

"Do you believe that W. M. Jones purchased, in good faith, from E. D. Jones the notes ex-

ecuted by S. B. Wallace to E. D. Jones, and paid to the said E. D. Jones a valuable consideration therefor?"

In this connection, and at the request of the defendants, the court gave the following:

"I charge you that by the term 'valuable consideration,' as used in the court's main charge, is meant either money or notes; that is, may be either or both money or notes."

Thereupon the appellant excepted to the instruction and requested, and the court refused to submit, the following special issue:

"Do you believe from the evidence that E. D. Jones was indebted to W. M. Jones in the sum of $2,500, or any sum, at the time the said E. D. Jones transferred the notes to him, the said W. M. Jones?"

There is no testimony in the record that contradicts the fact that E. D. Jones executed a note to W. M. Jones. The contest was entirely as to whether the $2,500 note was executed for actual borrowed money, or was only a simulated transaction. And in view of the special definition submitted at the request of appellees the jury might reasonably have concluded that the special issue No. 5 submitted to them meant that, if the note was in fact executed, the mere fact of its execution alone constituted a "valuable consideration," and have given their answer accordingly. The jury could reasonably conclude under the definition that the execution of "a note" would satisfy the law even without the existence of consideration; and the jury could have referred the term "good faith" to the belief of W. M. Jones that E. D. Jones was the owner of the land notes. It was a controlling issue in the case as to whether or not E. D. Jones was in fact indebted to W. M. Jones in the sum of $2,500, or any sum, at the time of the transfer of the land notes. If E. D. Jones did not in fact actually owe W. M. Jones this sum, there was no consideration, and the transfer of the land notes was purely voluntary and not legally effective. The requested special issue should have been given.

[3] Considering next the deed to S. B. Wallace, it is concluded that, in view of the findings of the jury, having evidence to support them, the conveyance of the land would not be legally void and of no effect. The issues submitted to the jury in that respect were full, pertinent, and correct, According to the findings of the jury, and which the evidence supports, S. B. Wallace was a purchaser for a valuable consideration, actually paid, without notice of the fraudulent intent or any fraud on the part of his grantor, E. D. Jones. In such facts the conveyance would not be fraudulent or void as to appellee Wallace under the terms of the statute. Articles 3966, 3967, Rev. Stat.

Therefore the judgment will be affirmed as

to appellee S. B. Wallace, but will be reversed and the cause remanded for another trial in so far as it pertains to appellee W. M. Jones.